**SO ORDERED.**

**SIGNED this 26 day of February, 2007.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| JORGE COLON, JR. and ANTOINETTE | ) | |
| VALENTINA ORTIZ-COLON, | ) | Case No. 04-42174 |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |
| JAN HAMILTON, as Chapter 13 Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 05-7032 |
| | ) | |
| WASHINGTON MUTUAL BANK, FA. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER AND OPINION**

This matter is before the Court on the Motion for Stay Pending Appeal filed by Defendant, Washington Mutual Bank, FA.[1] On January 26, 2007, the Court entered a Memorandum and Order granting judgment in favor of Plaintiff, Jan Hamilton, Chapter 13 Trustee, and against Defendant, Washington Mutual Bank, FA, on the Trustee's complaint to avoid Washington Mutual's mortgage lien against Debtors' homestead.[2] Defendant filed a timely Notice of Appeal to the Tenth Circuit Bankruptcy Appellate Panel.[3] On February 8, 2007, Defendant (hereafter "Appellant") filed the current motion seeking a stay of the Court's judgment pending appeal.

As a preliminary matter, this Court has jurisdiction to consider this Motion for Stay, notwithstanding that the appeal is now pending before the Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals. Rule 8005 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that "a motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." For the reasons set forth below, the Court denies Appellant's motion.

Appellant properly articulates the four factors that are routinely used by the Court of Appeals for the Tenth Circuit to determine whether to grant a stay pending appeal pursuant to Fed. R. Bankr. P. 8005. Those factors are (1) the likelihood that the party seeking the stay

---

[1] The motion was docketed both in the main bankruptcy case, Case No. 04-42174, and in the adversary proceeding, Case No. 05-7032, as Docs. 72 and Doc. 99, respectively.

[2] Doc. 65 in the Case No. 04-42174 and Doc. 93 in Adv. No. 05-7032.

[3] Doc. 67 in the Case No. 04-42174 and Doc. 97 in Adv. No. 05-7032. Doc. 97.

2

will prevail on the merits of the appeal; (2) the likelihood that the moving party will suffer irreparable injury unless the stay is granted; (3) whether granting the stay will result in substantial harm to the other parties to the appeal; and (4) the effect of granting the stay upon the public interest.[4] The Appellant bears the burden of establishing that it is likely to prevail on the merits of its appeal.[5] "In the absence of any argument or authority provided in support of Appellants' belief of success on the merits, the court must deny Appellants' motion for a stay."[6]

Appellant's only argument in support of the first element regarding the likelihood it will succeed on the merit of the appeal is that

> . . . the Judgment is likely to be reversed on appeal for several reasons. Another Kansas bankruptcy judge has issued an option [sic] that appears to be at odds with this decision with respect to the interpretation of 11 U.S.C. § 551 and the doctrine of claim and issue preclusion.

Appellant then cites to the *Griffin v. Novastar Mortgage, Inc. (In re Ramsey)*[7] case as the sole basis for its contention that it will likely succeed on the merits of its appeal.

The Court finds that the *Ramsey* opinion issued by Judge Berger provides no basis for holding that this Court's judgment is likely to be reversed on appeal. The facts in *Ramsey*

---

[4] *In re Lang,* 414 F.3d 1191, 1201 (10th Cir. 2005).

[5] *In re Sunflower Racing, Inc.*, 225 B.R. 225, 227 (D. Kan. 1998) (citing *In re KAR Development Associates, L.P.*, 182 B.R. 870, 872 (D. Kan. 1995)).

[6] *Id.* (citing *KAR*, 182 B.R. at 872 and *Rajala v. Helms (In re Helms),* 142 B.R. 964, 966 (D. Kan.1992)).

[7] ___ B.R.___, 2006 WL 3630332 (Bankr. D. Kan. 2006) (Berger, J.).

3

are clearly distinguishable from the facts in this case, and make a dispositive difference in the outcome.

In *Ramsey*, the debtor submitted a Chapter 13 plan that contained the following language:

> Debtor has reason to believe that creditor Novastar Mortgage Company does not have a properly perfected security interest on debtor's homestead. Apparently, there is no lien filed with the Johnson County Recorder of Deeds as of the date of this bankruptcy filing. Creditor should be required to provide proof of lien perfection along with its proof of claim. If this creditor cannot provide proof of lien perfection, this debt should be treated as an unsecured debt and paid according to the terms of this plan.[8]

The plan was confirmed on October 1, 2004; a year later, the Trustee brought an adversary proceeding against both debtor and Novastar, seeking to avoid Novastar's mortgage lien and preserve it for the estate. One day after filing that adversary proceeding, the Trustee and Novastar filed a joint motion to settle the case.

The motion stipulated that Novastar's mortgage lien was unperfected, and it proposed that Novastar would forfeit its admittedly unsecured claim and pay the Trustee $4,000, which the Trustee would use to pay a 60% dividend to unsecured creditors. In return, Novastar would receive relief from stay to foreclose its admittedly unrecorded mortgage against debtor, since its lack of perfection would not provide a defense to debtor in state court pursuant to K.S.A. § 58-2223. That statute provides that an unrecorded mortgage is still valid between the parties thereto. Debtor, obviously, objected.

---

[8] *Id.* at *1.

4

In ruling on the objection, Judge Berger correctly held that debtor's Chapter 13 plan did not contain the required precise and definite findings of fact that Novastar's lien was unperfected to result in a *res judicata* effect in that case. He declined to bar Novastar from further litigating the issue of perfection and treatment of its lien.[9] Judge Berger also succinctly outlined the prevailing Tenth Circuit law concerning the *res judicata* effect of Chapter 13 plans that try to do through the confirmation process what creditors routinely argue should more appropriately be accomplished through an adversary proceeding.[10]

Notwithstanding Appellant's protestations to the contrary, its mortgage lien was also not avoided as a result of language contained in the confirmed plan.[11] Instead, that issue was decided as a result of the adversary proceeding filed by the Trustee, and a judgment on the merits after trial. At no time has this Court ever held that confirmation of the Chapter 13 plan in this case constitutes *res judicata* on the issue of whether or not the Appellant's lien

---

[9] The court nevertheless declined to approve the settlement because the likelihood of the Trustee successfully avoiding Novastar's lien was "100%."

[10] *Id.* at *3 (discussing the application of *In re Andersen*, 179 F.3d 1253 (10th Cir. 1999) and *In re Poland* (382 F.3d 1185 (10th Cir. 2004) to Chapter 13 plans that seek to determine the validity, priority or extent of a lien rather than making such a determination through an adversary proceeding). Although the *Andersen* and *Poland* cases are student loan cases, the *res judicata* principles are equally applicable.

[11] The Colon's plan contained the following language: It appears the mortgage with Washington Mutual Bank is improperly perfected and as such may be avoidable by the Chapter 13 Trustee. Until that issue is resolved Debtors will make their normal monthly house payment to the trustee. The trustee will hold the money for distribution until the issue involving the mortgage is resolved. If the lien us in fact unperfected as to the property known as Lot 79 Arrowhead Heights Subdivision No. 5 in the City of Topeka, Shawnee County, Kansas the debtors will pay the amount of the monthly house payment, which is approximately $720.00 per month, to the trustee for a period of 48 months in exchange for an Order by the trustee releasing nay claims held by the Chapter 13 Trustee and Washington Mutual Bank as to this property. If the lien is found to be valid, the trustee will turn over the monies held to Washington Mutual and the Debtors will once again begin making payments to this creditor. Debtor will pay their second mortgage directly to the creditor, Homecoming Funding. There are no arrearages.

5

was properly perfected, which was the issue in *Ramsey*.[12] In fact, the plan language here expressly contemplated a second proceeding, which is the adversary proceeding that resulted in a judgment that Appellant's mortgage was not properly perfected.

This Court completely concurs with the *Ramsey* decision concerning the *res judicata* effect of the Chapter 13 plan language in that case as it related to an attempt to attack the validity, priority or extent of a lien. That said, the Court also finds that the decision in *Ramsey* is in no way inconsistent, or even related to, the decision by this Court that is the subject of the appeal. Because Appellant's only basis for suggesting this Court's decision was wrongly decided is its reliance on a case with a wholly distinguishable fact pattern, the Court finds that Appellant has failed to provide any basis that would allow the Court to find a likelihood of success on appeal. Absent such a finding on the first of the four required elements for obtaining stay, the Court cannot grant the motion for stay pending appeal.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Appellant's Motion for Stay Pending Appeal is denied.

###

---

[12]Appellant is confusing a ruling on a different issue in this case. The Court did find that the arrangement set forth in the Chapter 13 plan that required the Trustee to release the lien against Debtors' homestead, in the event he was successful in his adversary proceeding to void the lien for the benefit of the estate, in exchange for 48 payments of approximately $720.00, was not subject to Washington Mutual's later attack about whether this amount was reasonable because the confirmation of the plan, without any objection, constituted *res judicata* as to how much Debtors had to pay the estate to obtain the estate's release. The Colon plan was confirmed on December 2, 2004, without objection by Washington Mutual to the sufficiency of this "buy back" provision or anything else, even though they clearly had notice of its provisions. Washington Mutual has also never sought to revoke confirmation, notwithstanding sufficient notice to do so. (*See* Doc, 15 at pp. 10-11).